IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHESTER MARSHALL and | ) | |
| RICHARD WHITBY, individually and | ) | |
| on behalf of a class of other similarly | ) | |
| situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 10-cv-0011-MJR-CJP |
| | ) | |
| AMSTED INDUSTRIES, INC. and | ) | |
| AMSTED RAIL COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

Reagan, District Judge:

        A.    Introduction and Overview of Case

Five months ago, Chester Marshall and Richard Whitby filed suit in this Court alleging that their employer (the owner-operator of a steel foundry and manufacturing facility in Granite City, Illinois) willfully failed to pay wages and overtime compensation and failed to keep accurate payroll records, all in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

The complaint actually names two Defendants -- Amsted Industries, Incorporated and Amsted Rail Company, Inc. – whom Plaintiffs allege form a single integrated enterprise and maintain a joint-employer relationship. Without comment on the merits of that allegation, the Court refers to Defendants collectively as "Amsted" herein. Amsted manufactures freight cars and locomotive components at the Granite City facility.

Marshall has worked at Amsted since August 2006 as an hourly-paid leadman, instructor and supervisor. Whitby has worked at Amsted since January 2004 as an hourly-paid chipper. Marshall and Whitby ("Plaintiffs") submitted with the original complaint herein their consents to proceed as FLSA party plaintiffs. (The complaint does not mention this, but Amsted's recent pleadings indicate that Plaintiffs both are "currently laid off" and "represented by the Steelworkers," *see* Doc. 74-1, p. 3).

The undersigned Judge enjoys subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, via the FLSA claims. A second count, based on Illinois law, was dismissed in a May 10, 2010 Order which directed Plaintiffs to file an amended complaint by June 7th containing only the FLSA claim (*see* Doc. 72). Plaintiffs did so (*see* Doc. 80). The amended complaint seeks compensatory damages, liquidated damages, attorneys' fees, costs and interest.

Attached to the amended complaint, in compliance with the undersigned Judge's May 10th Order, is a list of the 262 employees who – to date – have consented to join this action (in addition to Marshall and Whitby). Each of these employees works (or during the period at issue herein *worked*) at Amsted's Granite City plant, within this Judicial District. The question now before this Court is whether to conditionally certify these claims as a collective action. For the reasons thoroughly discussed below, the undersigned Judge answers that question affirmatively.

The FLSA authorizes employees to present their claims through a "collective action" filed on behalf of themselves and other similarly situated workers. ***Alvarez v. City***

*of Chicago*, – F.3d –, 2010 WL 2011500 (7th Cir. May 21, 2010), *citing* 29 U.S.C. § 216(b).  A FLSA collection action differs in several key respects from a typical class action under Federal Rule of Civil Procedure 23.  Significantly, "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out" of the suit.  *Alvarez,* 2010 WL 2011500, * 2.

The opt-in requirement is strictly enforced.  *See, e.g., Harkins v. Riverboat Services, Inc.,* **385 F.3d 1099, 1101 (7th Cir. 2004)("The statute is unambiguous: If you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party.").**  To the undersigned Judge's knowledge, 264 total plaintiffs have opted into this action via written consents.

Now before the Court, fully briefed, is Plaintiffs' April 7, 2010 motion seeking conditional class certification.  Plaintiffs ask this Court to (1) conditionally certify the case as an FLSA collective action, (2) authorize Plaintiffs to send notice to all current and former hourly employees of Amsted's Granite City plant who worked any time during the past three years (excluding certain categories of workers), (3) order Amsted to provide a computer-readable data file with the name, last know address, employment dates, and job title for each such employee, and (4) order Amsted to post conspicuous notice of this case in the break rooms of the plant.

B.    Analysis of Pending Motion

Plaintiffs allege that Amsted (who currently employs about 320 hourly

3

employees at its Granite City facility) has implemented a company-wide policy and practice to pay workers based on their *scheduled shifts* instead of the hours they actually worked. According to Plaintiffs, when Amsted hourly employees perform work above and beyond their scheduled shift, they are not compensated for their overtime hours, which runs afoul of the FLSA.

The FLSA, 29 U.S.C. § 207(a)(1), provides that no employer shall employ any employee who is engaged in the production of goods for commerce "for a workweek longer than forty hours, unless such employee receives compensation" for the overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." Stated another way, workers covered by the FLSA "must be paid at least one and one-half the amount of their regular wages for work beyond forty hours per week or eight hours per day." **Demos v. City of Indianapolis, 302 F.3d 698, 701 (7th Cir. 2002).** Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours." **Parth v. Pomona Valley Hosp. Medical Center, 584 F.3d 794, 798 (9th Cir. 2009),** *quoting Barrentine v. Arkansas-Best Freight System, Inc.***, 450 U.S. 728, 379 (1981).**

In the case at bar, Plaintiffs assert that Amsted violates this mandate through a company policy and practice requiring hourly workers - *before the beginning of their paid shifts* – to obtain protective equipment, tools and supplies, put on the protective gear (such as fire-retardant pants, protective jackets, helmets, goggles, gloves, boots and aprons), service their tools and equipment, and clean their work areas. Plaintiffs further assert that

4

Amsted requires them – *after the end of their paid shifts* – to shut down machinery, store tools, shovel sand, remove their protective clothing, and prepare work areas for the following shift or the next day.

Allegedly, all this pre- and post-shift work (including the donning and doffing of personal protective equipment or "PPE") occurs without compensation to the hourly employees. Plaintiffs contend that this policy and practice contravenes the FLSA[1] and produces "substantial ill-gained profits" for Amsted at the expense of Amsted's employees.

Plaintiffs ask the Court to conditionally certify this case as an FLSA collective action and to authorize Plaintiffs to send notice under § 216(b) to all current and former hourly employees who worked during the last three years at Amsted's Granite City facility. Excluded from this group would be supervisory, technical, clerical and plant protection employees. [2]

---

[1]   *See, e.g., IBP, Inc. v. Alvarez*, **546 U.S. 21, 30-31, 42 (2005) (addressing when activities – such as pre- and post-shift donning and doffing of specialized protective gear – are compensable under the portal-to-portal provisions of the Fair Labor Standards Act**).

[2]   The FLSA exempts several classifications of employees from the overtime wage requirements. For instance, the overtime mandate does not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." **29 U.S.C. § 213(a)(1);** *Kennedy v. Commonwealth Edison Co.,* **410 F.3d 365, 369 (7th Cir. 2005);** *Roe-Midgett v. CC Services, Inc.,* **512 F.3d 865, 869 (7th Cir. 2009).**

The decision to create an opt-in class under § 216(b) lies within the district court's discretion.  *Hipp v. Liberty National Life Ins. Co.*, **252 F.3d 1208, 1219 (11ᵗʰ Cir. 2001)**, *cert. denied*, **534 U.S. 1127 (2002).**   As noted above, § 216(b) authorizes employees to bring collective actions "in behalf of ... themselves and other employees similarly situated."  The FLSA does not expressly provide for conditional certification of claims as a collective action *or* judicial approval of notice to putative plaintiffs.  But in ***Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989),** the United States Supreme Court held that district courts have discretion "in appropriate cases" to "implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs."[3]

Conditional certification does not entail the district court adjudicating the *merits* of plaintiffs' claims.  It is simply a finding that the claims are similarly situated enough to proceed as a collective action.  *See Hoffmann*, **493 U.S. at 173.**   Writing for the majority in **Hoffmann**, Justice Kennedy explained that a collective action allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  ***Id.*, 493 U.S. at 170.**

---

[3]    ***Hoffmann*** was a suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), but the ADEA incorporates the provisions of the FLSA which authorize employees to bring action on behalf of themselves "and other employees similarly situated," 29 U.S.C.§ 216(b).

The parties to the instant case do not dispute that this Court has the power to conditionally certify an FLSA collective action (or to oversee distribution of notice to putative plaintiffs). They disagree as to whether Plaintiffs' claims in the case sub judice deserve conditional certification as a collective action – which leads us to the standard governing this issue.

The FLSA allows the claims of "similarly situated employees" to proceed as a collective action, but the FLSA and the regulations promulgated thereunder do not define "similarly situated" or furnish a test to determine when FLSA claims qualify to proceed as a collective action. Nor has the United States Court of Appeals for the Seventh Circuit delineated a standard governing certification for a collective action. This Court is not without guidance, though.

A majority of district courts (in reported and unreported decisions) have adopted an *ad hoc* two-step process to determine whether to certify a collective action under the FLSA. ***See, e.g., Bunyan v. Spectrum Brands, Inc.,* 2008 WL 2959932, \*2 (S.D. Ill. 2008); *Perry v. National City Mortgage, Inc.,* 2007 WL 1810472, \*2 (S.D. Ill. 2007); *Austin v. CUNA Mutual Insurance Society,* 232 F.R.D. 601, 605 (W.D. Wis. 2006); *Gambo v. Lucent Tech., Inc.,* 2005 WL 3542485, \*4 (N.D. Ill. 2005); *Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); and *McQuay v. American Intern. Group, Inc.,* 2002 WL 31475212, \*2 (E.D. Ark. 2002).***

<u>Step one</u> of this process is *conditional* certification. The purpose of

7

conditional certification is to decide whether the proposed class should be notified of the pending action.  *See, e.g., Norris-Wilson v. Delta-T Group, Inc.,* – **F. Supp. 3d –, 2010 WL 2196066, \*2 (S.D. Cal. June 1, 2010).**  Discovery is not complete at this point, so the court decides whether to conditionally certify a class based on the pleadings and any declarations or affidavits submitted by the parties.  At step one, the named (or "representative") plaintiffs need only make a threshold showing that the putative plaintiffs are similarly situated.  If this showing is made, notice is sent to potential opt-in claimants. *See Perry,* **2007 WL 1810472, \*2.**

Step two occurs after the parties have engaged in discovery and (usually) the defendant moves to de-certify the action.  A more stringent test governs step two. *Thiessen  v. General Electric Capital Corp.,* **267 F.3d 1095, 1103 (10ᵗʰ Cir. 2001);** *Mielke,* **313 F. Supp. 2d at 762;** *Harris v. Vector Mktg Corp.,* **– F.R.D. –, 2010 WL 1998768, \*2 (N.D. Cal. May 18, 2010).**

The Eleventh Circuit described an FLSA collective action as follows in *Morgan v. Family Dollar Stores, Inc.,* **551 F.3d 1233, 1259 (11ᵗʰ Cir. 2008),** *cert. denied,* **130 S. Ct. 59 (2009):**

> The key to starting the motors of a collective action is showing that there is a similarly situated group of employees....
>
> The FLSA itself does not define how similar the employees must be before the case may proceed as a collective action. And we have not adopted a precise definition of the term....

> While not requiring a rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase.

The case at bar is at the first step (conditional certification phase), at which the "district court determines whether other similarly situated employees should be notified." *Morgan*, **551 F.3d at 1260.**   Although the record must contain more than mere allegations or "counsel's unsupported assertions" to warrant conditional certification, the representative plaintiff need only show a "reasonable basis" for his claim that there are similarly situated employees. *Morgan*, **551 F.3d at 1260-61**.

The plaintiff's burden at step one has been described as minimal, modest, fairly lenient, not particularly stringent, not high, and not heavy. *See, e.,g, Thiessen,* **267 F.3d at 1102 (at the conditional certification phase, the district court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan");** *Norris*, **2010 WL 2196066 * 2 ("the standard for conditional certification is 'fairly lenient,' and [the motion] is usually granted");** *Austin*, **232 F.R.D. at 605 (the burden "is not a high one," and the representative plaintiff need only "demonstrate that there is some factual nexus that connects him to other potential plaintiffs as victims of an unlawful practice").**

At step one (before discovery has been completed), the court does not resolve factual disputes, decide substantive issues, reach the merits, or make credibility determinations.  *Summa v. Hofstra University*, **– F. Supp. 2d –, 2010 WL 2232671, *4 (E.D.**

**N.Y. June 1, 2010).**  Instead, the court examines the pleadings and any affidavits.  If the plaintiffs meet their burden "by making a modest factual showing" that they "were victims of a commons policy or plan that violated the law," the court makes a *preliminary* determination that the potential plaintiffs are similarly situated, after which potential class members are notified and given a chance to opt-in to the action.  ***Id.***

   Step two comes down the road, usually at the close of discovery, at which point the court determines on a developed record whether the class members actually are similarly situated.  ***See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  *Accord Summa*, 2010 WL 2232671 at *5.**  "At this juncture, if discovery reveals that the plaintiffs are <u>not</u> similarly situated, then 'the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representative as may proceed to trial on their individual claims.'" ***Summa* at *5.**

   As Judge Flaum stated last month in ***Alvarez*, 2010 WL 2011500, *4:** "When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs." ***Id., citing Hipp*, 252 F.3d at 1218, and *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).   *Accord Austin*, 232 F.R.D. at 605 (At the close of discovery, defendant can move to decertify, "at which point the court examines in detail the evidence and arguments ... on the question of similar situation," dismisses without prejudice any opt-in plaintiffs not similarly situated to the representative plaintiff, or decertifies the entire class if no class member is similarly situated.).**

On the other hand, if the plaintiff has demonstrated that the class members all *are* similarly situated, the case proceeds to trial as a collective action. ***Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).**

In the instant case, the undersigned Judge concludes that the representative plaintiffs have satisfied their step one burden.  Plaintiffs have made a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." ***Austin*, 232 F.R.D. at 605, *quoting Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D. N.Y. 2005).**

Relying heavily on the undersigned Judge's decision in ***Bunyan*,** Amsted argues that conditional certification is <u>not</u> merited, because Plaintiffs have not offered sufficient evidence that the putative plaintiffs are similarly situated with respect to their job duties or their compensation.   In fact, argues Amsted, the putative plaintiffs have fundamentally *dissimilar* job duties encompassing a wide range of responsibilities – from "unspecialized Laborers and Custodians" at "one end of the spectrum" to "trained craft positions, such as electricians" at the other end (Doc. 74, p. 20), and they are paid different ways (some with incentive pay, some only on a straight hourly rate, etc.).

Amsted further contends that conditional certification is improper because four different collective bargaining agreements ("CBA"s) govern the terms of employment for the potential plaintiffs.   Thus, reasons Amsted, the fact-intensive determination of hours worked (and overtime pay required) for one hourly worker at the facility would be quite distinct from the detailed analysis required for another hourly employee working

11

under a different CBA.   Amsted supports these arguments with declarations of various Amsted employees, including the Manager of Safety and Human Resources for Amsted's Granite City facility (Chris Dockery).[4]

Plaintiffs concede that the putative class members are employees with different job titles and job duties, working under more than one CBA.   This does not preclude conditional certification of the claims.   Identical job tasks and titles are not required.  As the Eleventh Circuit declared in **Hipp, 252 F.3d at 1217,** for "an opt-in class to be created under § 216(b), ... plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  Here, the declarations provided with Plaintiffs' motion reveal that despite various job functions and titles of the employees in question, this lawsuit challenges one company policy applicable to all hourly workers (involving their unpaid pre- and post-shift work).

The Court finds persuasive Plaintiffs' assertion that conditional certification is proper, because the class of employees on behalf of whom they bring this action "were subjected to the same time-keeping and compensation policy that required [them to] work outside their scheduled shift time" without pay, "were subject[ed] to the same or similar unlawful practice that deprived them of the overtime pay they earned," and Amsted's practice violated the FLSA's requirements (Doc. 65, p. 10).

---

[4]    Attached to Amsted's 26-page memorandum opposing conditional certification are an additional 453 pages of exhibits (Doc. 74-1 to Doc. 74-33).

These claims derive from a class-wide policy/practice and depend on common sources of proof, thus rendering them appropriate for collective treatment. The detailed allegations of the amended complaint and the 22 declarations offered in support of those allegations suffice to clear the step one hurdle and permit conditional certification.

This determination is not precluded by the undersigned Judge's opinion in *Bunyan*. That case is distinguishable from the instant lawsuit in several key respects. First, the claims involved in *Bunyan* were not the same as the claims presented herein. The *Bunyan* plaintiffs alleged that their employer improperly classified workers so as to exempt them from FLSA's overtime requirements. In FLSA cases based on misclassification claims, the precise duties and tasks performed by the employees are directly at issue.

By contrast, the case at bar involves claims that Amsted's policy requires employees to work without pay outside their designated shifts. These "off-the-clock" claims do not hinge on precisely *what task* the workers were performing before or after their shift – the question is *whether* they were required to work overtime without pay.

Moreover, the issue of conditional certification was decided at two very different stages in the litigation. In *Bunyan*, discovery was well underway (approximately 15 months of discovery had occurred), and depositions had been conducted, resulting in a far more developed record. So, after noting that the parties had "conducted a substantial amount of discovery in this case," the Court engaged in analysis of *both step one and step two* before concluding that Plaintiffs had failed to meet their burden and that "certification of a class action in this particular case would make the litigation unmanageable and

inefficient."  *Bunyan*, **2008 WL 2959932 at \*10.**

In the instant case, the Scheduling and Discovery Order (just issued in March 2010) authorizes discovery through June 2011, the parties have exchanged initial disclosures under Federal Rule of Civil Procedure 26(a)(1), and no depositions have been taken (at least as of the date Amsted filed its May 17, 2010 brief herein, Doc. 74, pp. 11-12). Unlike *Bunyan***,** here there are no deposition excerpts or documentary exhibits producing the conclusion that a collective action would be unmanageable or inefficient.  We are at a preliminary stage of this litigation, this is a step one analysis, and Plaintiffs have sustained their burden of demonstrating that they and the potential class members are similarly situated.

C.    Conclusion

Accordingly, the Court **GRANTS** Plaintiffs' motion for conditional class certification (Doc. 65).  The Court **CONDITIONALLY CERTIFIES** this case as a collective action under the FLSA and **AUTHORIZES** Plaintiffs to send notice under § 216(b) of the FLSA to all current and former hourly employees who worked at Amsted's Granite City facility in the past three years.

However, *this Order* <u>does</u> <u>not</u> approve the proposed notice attached to Plaintiffs' motion and memorandum (Doc. 65-2, pp. 2-6).  Amsted contends the notice is defective or deficient in several respects (*see* Doc. 74, p. 12, fn. 9).  The Court has questions regarding the proposed notice, would like the parties to address the "start date" from

14

which the three-year period will be calculated (a date which presumably will be included on the first page of the notice), and will provide an opportunity for Amsted to weigh in on Plaintiffs' request (Doc. 65, p. 1) that the Court order Amsted to provide a computer-readable data file with names, addresses and employment data as to "each such employee" and to "conspicuously post notice of this case in the break rooms at its facility,"

The undersigned Judge **WILL HEAR ARGUMENT** on the contents of the notice, the employee data request, and the notice posting issue at the **July 7, 2010 2:00 pm STATUS CONFERENCE.** The July 7th conference is not an opportunity to rehash (or urge reconsideration of) the decision to conditionally certify these claims.

On or before **June 30, 2010,** Plaintiffs and Amsted each shall draft and e-file a Proposed Notice herein. The proposed notices may be docketed in cm/ecf by selecting "CIVIL," choosing "OTHER DOCUMENTS," using the docketing event for "Proposed Findings of Fact and Conclusions of Law," and (in the open text box) *removing* the words "Findings of Fact and Conclusions of Law" and editing the text to say "Proposed Notice of Collective Action under Fair Labor Standards Act."

IT IS SO ORDERED.

DATED June 16, 2010.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge