IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHESTER MARSHALL and RICHARD WHITBY, individually and on behalf of a class of others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 10-cv-0011-MJR-SCW ) |
| AMSTED RAIL COMPANY, INC., | ) ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.     Introduction and Procedural Overview

Amsted Rail, Inc. ("Amsted") manufactures freight car and locomotive undercarriage components at a production facility in Granite City, Illinois, located within this Judicial District.  In January 2010, two hourly-paid employees, both union members working at the Granite City plant (Chester Marshall and Richard Whitby), filed suit in this Court alleging that they and other similarly situated employees were entitled to recover unpaid wages and overtime compensation from Amsted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, et seq., and the Illinois Minimum Wage Law, 820 ILCS 105/1, et seq.  On threshold review, the undersigned Judge confirmed that he enjoys subject matter jurisdiction under the federal question statute (28 U.S.C. 1331) via the FLSA allegations, and that supplemental jurisdiction covered the state-law claims (28 U.S.C. 1367(a)).

1

The original complaint named two Defendants (Amsted Industries, Inc. and Amsted Rail Company, Inc.) and listed 65 employees other than Marshall and Whitby who had opted into the lawsuit, as plaintiffs must to join an FLSA collective action.  An Order partially granting a motion to dismiss or strike the complaint left only the FLSA claims.

An amended complaint and answer followed, and Amsted moved for conditional certification of a collective action.  After extensive briefing and hearing, the undersigned Judge conditionally certified this case as a collective action under the FLSA and authorized notices to potential plaintiffs (current and former hourly employees of Amsted) under § 216(b) of the FLSA.  Plaintiffs subsequently dismissed Amsted Industries, Inc., leaving Amsted Rail Company, Inc. as the sole Defendant herein.

At the November 2010 status conference, the undersigned Judge confirmed that the total number of Plaintiffs (then totaling 493) would be no greater than 494 and set trial for January 23, 2012 (Doc. 142).  Magistrate Judge Stephen C. Williams granted a joint motion to extend the deadlines for disclosing and deposing expert witnesses (Doc. 151), and in June 2011, the undersigned Judge revised the schedule for dispositive motions to be filed and briefed (Doc. 169).[1]

A motion for partial summary judgment, filed by Amsted May 26, 2011, with supplemental briefs filed through September 9, 2011, is now before the

---

[1]     That schedule included a September 30, 2011 deadline for all dispositive motions.  The parties anticipated that they would have the benefit of the Court's ruling on the initial summary judgment motion before having to file and brief a second set of motions, so that arguments could be tailored and issues narrowed therein. If counsel now require additional time to meet the September 30th deadline, they should file a motion setting forth their position(s), and the Court will endeavor to promptly rule on that request.

undersigned Judge.  For the reasons explained below, the Court partially grants and partially denies Amsted's motion (Doc. 157).

B.     Summary of Key Allegations/Arguments

Amsted employs hundreds of hourly-paid workers at its Granite City facility.  Amsted pays hourly employees based on their scheduled shift times, not on their actual hours worked.  Plaintiffs allege that during the time period relevant to this lawsuit, Amsted required them to work before and after their paid shifts without compensation.  The pre-shift work included putting on ("donning") a substantial amount of protective gear, obtaining tools and supplies, testing equipment, obtaining tool repairs or replacements, and organizing their work areas.  The post-shift work included shutting down machinery, storing tools, cleaning work areas for the following day or shift, shoveling sand, blowing debris off themselves, and taking off ("doffing") a substantial amount of protective gear.

Plaintiffs maintain that these tasks are integral and indispensable to the performance of their assigned duties and merit compensation.  They assert that Amsted willfully failed to pay wages and overtime compensation, while enjoying substantial ill-gained profits at the expense of the hourly-paid employees undertaking these tasks.[2] Plaintiffs seek to recover compensatory damages (the unpaid wages and overtime compensation), plus liquidated damages, attorney's fees and costs under § 16(b) of the FLSA, and pre-judgment and post-judgment interest.

The motion now before the Court focuses only on the protective gear (not the other tasks listed above, such as obtaining replacement tools or cleaning work

---

[2]     Plaintiffs also allege that Amsted willfully failed to keep accurate time and/or payroll records (see amended complaint, Doc. 80, p. 6).

areas).  The amended complaint alleges that the protective gear includes fire-retardant and/or protective pants, fire-retardant and/or protective jackets, protective sleeves, hoods, helmets with shields, goggles, ear plugs, respirators, gloves, metatarsal boots, aprons, "and other protective clothing" (Doc. 80, p. 5).

Seeking partial summary judgment, Amsted advances two arguments:

(1)     Plaintiffs' claims for compensation based on time spent donning and doffing personal protective equipment ("PPE") are barred by § 203(o) of FLSA, and

(2)     because the time donning and doffing protective gear falls under § 203(o), it cannot constitute a "principal activity" under the FLSA as a matter of law.

Plaintiffs respond on several fronts.  First, Plaintiffs suggest that Amsted's request for partial summary judgment is inappropriate, because they have no separate "claim" for time spent donning and doffing; rather they have a single claim under the FLSA for wages they were not paid. The Court finds this argument unpersuasive.

Next, Plaintiffs point out that although their workdays typically begin with donning PPE, most of that donning and doffing occurs *outside* the confines of when they clock in and clock out, and they seek to recover payment for the compensable tasks they perform *within* the period between clocking in and clocking out of work.[3]

Put another way, Plaintiffs' damage calculation *excludes* time donning and doffing "outside the clock rings" (before clocking in and after clocking out), but they still believe that time is relevant, as follows.  Plaintiffs maintain that to the extent this Court

---

[3]     Plaintiffs explain that they "rely on the difference between the time clock punches and the paid shift to provide the requisite reasonable estimation of their unpaid wages" and "have essentially abandoned their request to recover most of the time spent donning and doffing" (Doc. 170, p. 2).   A supplemental brief filed September 9, 2011 clarifies that they *do not concede* that time spent donning and doffing PPE before clock-in and after clock-out is not compensable, but they do not seek damages for that time in this case (Doc. 177, p. 1).

finds donning and doffing of PPE <u>not</u> compensable, those acts still are integral and indispensable to the employees' jobs and thus may start (and end) the compensable workday such that all tasks performed *in between* become compensable (Doc. 170, p. 2, p. 15). That is, "even if the donning and doffing of PPE is excluded from the definition of work under § 203(o) of the FLSA ..., it nevertheless justifies Plaintiffs' use of the time clock punches to measure Plaintiffs' unpaid compensable time worked" (*id.*). Plaintiffs also contend that material fact issues remain regarding the application of § 203(o), precluding the grant of summary judgment on that basis.

Finally, emphasizing that Amsted listed § 203(o) as an affirmative defense in its answer to the amended complaint, Plaintiffs argue that once a defendant seeks summary judgment based on an affirmative defense, it shoulders the burden of establishing each element of that affirmative defense, i.e., Amsted must prove the application of "the narrow § 203(o) exclusion" and has failed to do so (Doc. 170, p. 11). In its reply brief, inter alia, Amsted insists that Plaintiffs have failed to recognize caselaw plainly revealing that Plaintiffs bear the burden of proving that § 203(o) does *not* apply to their claims (Doc. 173, p. 1). Analysis of Amsted's motion begins with reference to the applicable statutes, rules, and legal standards.

C.    <u>Standards Governing Motions for Summary Judgment</u>

In assessing Amsted's motion and the parties' supporting and opposing briefs, the Court is guided by the following standards. Federal Rule of Civil Procedure 56 governs summary judgment motions. Under Rule 56, summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and the moving party is entitled to judgment as a

matter of law. *Ellis v. DHL Exp. Inc.*, 633 F.3d 522, 525 (7th Cir. 2011); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Dept. of Labor*, 578 F.3d 497, 501 (7th Cir. 2009).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, and draw all legitimate inferences in favor of, the non-moving party. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010); *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

When the non-moving party bears the burden of proof, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. *Reget*, 595 F.3d at 695. To survive summary judgment, the non-movant must provide admissible evidence on which the jury or court could find in his favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

In deciding a summary judgment motion, the court may not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. *National Athletic*, 528 F.3d at 512. As the Seventh Circuit Court of Appeals reiterated in December 2010: "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria, Illinois*, 627 F.3d 295, 297 (7th Cir. 2010), *quoting Brewer v. Board of Trustees of the University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007).

D.      Analysis of Amsted's Motion for Partial Summary Judgment

The FLSA mandates that employers pay overtime (one-and-a-half times the hourly wage) to employees who work more than 40 hours per week. ***Johnson v. Hix Wrecker Service, Inc.,* -- F.3d --, 2011 WL 2586284, *1 (7th Cir. July 1, 2011), *citing* 29 U.S.C. 207(a)(1).** Stated another way, the FLSA "sets the standard workweek at 40 hours and requires employers to pay their non-exempt employees one and one-half times their regular rate of pay for any hours worked in excess of 40." ***Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 666 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 1484 (2011), *citing* 29 U.S.C. 207(a)(1).** A brief detour into the legislative history of the FLSA sheds light on the provisions critical to the motion before this Court.

Enacted in 1938, the FLSA originally required employers engaged in the production of goods for commerce to pay their workers "not less than 25 cents an hour" and prohibited workweeks longer than 40 hours, unless the employee received compensation "at a rate not less than one and one-half times the regular rate" he received. ***IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).** The statute itself did not define "work" or "workweek," but early United States Supreme Court cases defined the terms quite broadly, relying on the remedial purposes of the legislation. ***Id.***

For example, in ***Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)**, the Supreme Court clarified that "exertion" was not necessary for an activity to constitute work under the FLSA, since "an employer, if he chooses, may hire a man to do nothing but wait for something to happen." Similarly, in 1946, the United States Supreme Court held that the time employees spent donning aprons and overalls constituted "work"

under the FLSA, and the time employees necessarily spent walking from the time clocks to their workstations must be treated as part of the "workweek." ***Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691-92 (1946)(the workweek includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace….").**

Congress responded in 1947 by passing the Portal-to-Portal Act, **29 U.S.C. 251-262.** That amendment *excluded* from compensation (i.e., exempted employers from compensating employees for) time spent walking, riding, or traveling to and from the place they perform their principal activities and also exempted time engaging in "preliminary" or "postliminary" activities which occur before or after the employee engages in his "principal" activity. **29 U.S.C. 254(a).** Another amendment to the FLSA followed in 1949, adding a section especially pertinent to the case at hand, the provision which became **29 U.S.C. 203(o)**, discussed below at length.

Other than these express exceptions (for travel to and from the place of the employee's "principal activity" and for activities preliminary or postliminary to that principal activity), the Portal-to-Portal Act did not alter the Supreme Court's interpretations of "work" and "workweek" or supply a different definition. ***IBP*, 546 U.S. at 28.** Consistent with those decisions interpreting the FLSA, the Department of Labor adopted a rule known as the "continuous workday rule," under which the workday is generally defined as the period between the commencement and completion (on the same workday) of the employee's principal activity or activities. **29 C.F.R. 790.6(b); *quoted in IBP*, 546 U.S. at 29.**

8

All was not settled, though.   Federal courts continued to confront questions regarding application of the FLSA.  In 1955, the Supreme Court held that battery plant workers must be compensated under the FLSA for time incident to changing clothes at the start of their shift and showering at the end of their shift, because their work required them to extensively use caustic and toxic materials, and vital considerations of health and hygiene required them to change clothes and shower in facilities that state law mandated their employers to provide.  **Steiner v. Mitchell, 350 U.S. 247, 248 (1956).**   The Supreme Court has continued to stress that the term "principal activity or activities" from the Portal-to-Portal Act embraces all activities that are an "integral and indispensable part of the principal activities."   **IBP, 546 U.S. at 29, citing Steiner, 350 U.S. at 252-53.**

So, not all work-related activities constitute "work" that must be compensated under the FLSA.  **Musch v. Domtar Industries, Inc., 587 F.3d 857, 859 (7th Cir. 2009).**   Employers are not required to pay employees for time they spend performing "preliminary" or "postliminary" activities which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." **Musch, 587 F.3d at 859, quoting 29 U.S.C. 254(a)(2).**

Ordinary washing up before work or showering after work, when performed under normal conditions, is preliminary or postliminary activity (not part of the employee's principal activities and not compensable under the FLSA). **Id.; Steiner, 350 U.S. at 256 (1956)("changing clothes and showering under normal conditions" generally is not compensable under the FLSA).**   If changing clothes "is merely a

convenience to the employee and not directly related to his principal activities," it too is considered a preliminary or postliminary activity, rather than a principal part of the activity. ***Musch*, 587 F.3d at 859, *citing* 29 C.F.R. 785.24(c).**

On the other hand, the employee *should* be compensated if his washing up or changing clothes is "integral" and "indispensable" to his employment. **IBP, 546 U.S. at 33 (activities which are "integral and indispensable" to "principal activities" are themselves "principal activities" under the FLSA).**  In this Circuit, protective gear qualifies as "clothes" for the purposes of § 203(o). ***Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427 (7th Cir. 2010), *citing with agreement Sepulveda v. Allen Family Foods, Inc.,* 591 F.3d 209 (4th Cir. 2009).**

As Chief Judge Easterbrook of the Seventh Circuit succinctly put it:  "The Fair Labor Standards Act requires employers to pay workers for time spent donning and doffing 'integral and indispensable' safety gear." ***Spoerle,* 614 F.3d at 428, *citing IBP,* 546 U.S. at 21, and 29 U.S.C. 254.**

However, the FLSA allows labor and management to *vary* this rule via custom and practice under (or the explicit terms of) a collective bargaining agreement. Section 203(o) – part of the "Definitions" of the FLSA –  provides (emphasis added):

> Hours Worked.   --  In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, **there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded** from measured working time during the week involved by the express terms of or **by custom or practice** under a bona fide collective-bargaining agreement applicable to the particular employee.

This leads, in the case at bar, to the first of two grounds on which Amsted seeks summary judgment as to Plaintiff's claims for compensation for time spent donning and doffing PPE.

### (1)  WHETHER § 203(o) BARS PLAINTIFFS' PPE DONNING/DOFFING CLAIMS

Amsted maintains that there exists a longstanding custom or practice under the relevant collective bargaining agreements that time spent donning and doffing protective gear does *not* count as compensable time worked. Therefore, argues Amsted, § 203(o) bars Plaintiffs' claims for compensation for donning and doffing PPE.

Before proceeding further, the Court addresses the burden of proof as to this point.  The parties disagree vehemently to whether § 203(o) is an *affirmative defense* to an FLSA claim, an *exemption* from FLSA's overtime requirements, or a *definitional exclusion*. How that question is answered determines whether Plaintiffs or Amsted bear the burden of proof on this issue here.

Pointing to the fact Amsted listed § 203(o) as an affirmative defense in its answer, Plaintiffs urge the Court to find § 203(o) to be an affirmative defense (requiring Defendant, who seeks summary judgment thereon, to establish each element thereof). Alternatively, Plaintiffs assert that § 203(o) is an exemption from FLSA coverage. Caselaw holds that FLSA "exemptions" must be narrowly construed against employers. **See, e.g., Johnson, 2011 WL 2586284, at \*1 (7th Cir. July 1, 2011)(interpreting a different FLSA provision, the motor carrier exemption, Seventh Circuit stated: "Because the FLSA is a remedial act, exemptions from its coverage are narrowly construed against employers.").**

The Seventh Circuit has not squarely decided if § 203(o) is an affirmative defense, an exemption, or a definitional exclusion.  In support of their position, Plaintiffs cite federal district court cases including **Valladon v. City of Oakland, 2009 WL 3401263 (N.D. Cal. Oct. 20, 2009)(finding § 203(o) to be an affirmative defense); and Davis v. Charoen Pokphand, Inc., 302 F. Supp. 2d 1314, 1320 (M.D. Ala. 2004)("The burden of proof is ultimately on [the employer] to prove that the FLSA's § 203(o) exception applies").**

Pointing to Circuit Court authority, Amsted insists that recent authority "overwhelmingly reveals that § 203(o) is *not* an affirmative defense;" rather it falls within the FLSA's definitions of key terms, "and the burden is therefore on Plaintiff to prove it does *not* apply."  Doc. 173, p. 2, **citing Salazar v. Butterball LLC, 644 F.3d 1130, 1138 (10th Cir. July 5, 2011)("We conclude that § 203(o) is not an exemption and, therefore, we do not read it narrowly or in the plaintiffs' favor.").**

Other Circuit Court decisions come down on either side of this debate. For instance, **Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003), affirmed on other grounds, IBP, Inc. v. Alvarez, 546 U.S. 21 (2005)**, indicates that § 203(o) is an exemption which should be narrowly construed.  To the contrary, **Anderson v. Cagle's Inc., 488 F.3d 945, 955-59 (11th Cir. 2007), cert. granted, 553 U.S. 1093 (2008),** held that § 203(o) is a definitional exclusion (not an exemption), because it is unlike other true exemptions under the FLSA.  **See also Allen v. McWane, Inc., 593 F.3d 449, 458 (5th Cir.), cert. denied, 131 S. Ct. 73 (2010)(holding that employee who sued for unpaid overtime compensation under FLSA "had the burden of proof as to whether or not a custom or practice under § 203(o) existed").**

12

Amsted's inclusion of § 203(o) as an affirmative defenses in its answer to the amended complaint does not, alone, warrant treating § 203(o) as an affirmative defense.  Here, whether § 203(o) is considered an affirmative defense, an exception or an exemption, the undersigned Judge finds that Amsted (who seeks judgment in it favor on the ground that Plaintiffs' activity is excluded from FLSA coverage) bears the burden of establishing that time Plaintiffs spend donning and doffing PPE should be excluded from their compensation.  ***See, e.g., Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 869 (7th Cir. 2008)("The burden is on [the employer] to establish that an employee falls within the FLSA's administrative exemption."), *citing Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365, 370 (7th Cir. 2005)("It is the employer's burden to establish that an employee is exempt from the FLSA's overtime requirements.").**  In the factually parallel case from within this Circuit, ***Sandifer v. U.S. Steel Corp., -- F. Supp. 3d --, 2009 WL 3430222, at \*4 (N.D. Ind. 2009),*** the Honorable Robert L. Miller, Jr. similarly concluded:  "The burden is on [the employer/summary judgment movant] to establish that the time spent on those activities should be excluded from plaintiffs' compensation."

To decide whether Amsted has sustained its burden of showing that the time Plaintiffs spent donning and doffing PPE falls within § 203(o)'s exclusion (time excluded "by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee"), we turn to the extensive record before this Court, which discloses the following relevant uncontested facts as to donning and doffing.

Amsted does not pay its workers from the time they clock in to the time they clock out; rather, employees are paid based on their scheduled shift times.  Under the "29-minute Rule," Amsted employees may clock in up to 29 minutes *before* their shift and can clock out up to 29 minutes *after* the end of their shift.  But Amsted requires employees to be in their department, ready to go to work, by the beginning of their shift.  Thus, employees arrive before their shift begins and put on their PPE.

Amsted's Granite City workforce is divided into multiple departments.  The employees at issue in this case work in Molding, Cleaning and Finishing, Building and Equipment, Quality Assurance, Yard, Core, Melted Metals, and Small Parts.  These departments have different work areas, and they require varying amounts of protective gear.  All employees don and doff basic PPE consisting of a hard hat, safety glasses, ear protection, steel-toed boots, and gloves.  Certain employees must wear additional PPE, like fire-retardant pants, protective jackets and sleeves, hoods, helmets with shields, respirators and aprons.  (So, for instance, a carbon arc operator must wear heavier PPE, such as face shield, goggles, thermal gloves, flame retardant jacket, and flame retardant pants).  Amsted's PPE requirements are based on the hazards associated with various jobs and OSHA mandates.

Amsted employees reporting to work enter though the personnel building, which houses locker rooms storing the employees' PPE.  Employees then proceed to the plant building, where six time clocks are located (all positioned after one enters the plant floor).  Donning PPE precedes other preparatory tasks, like walking to a tool shed for supplies/tools, after which employees walk to their assigned work stations.

Production employees at the Granite City facility (including Plaintiffs) are

14

not paid for time donning and doffing PPE.   The hourly employees at the facility are represented by one of four unions:   (a) the United Steelworkers, Local 1063 ("Steelworkers"); (b) the International Brotherhood of Electrical Workers, Local 309 ("IBEW"); (c) the International Association of Machinists and Aerospace Workers, Pattern Makers' Union, Local 688 ("Machinists 688"); and (d) the International Association of Machinists and Aerospace Workers, District 9 ("Machinists 9"). Accordingly, the terms and conditions of employment of Amsted employees are (and for 50 years have been) governed by one of four collective bargaining agreements ("CBA"s).

Amsted's brief indicates that 476 of the 488 current opt-in Plaintiffs (98% of the "class") are members of the Steelworkers, and the remaining 12 Plaintiffs (the other 2% of the "class") are divided among the IBEW, Machinists 688 and Machinists 9. *See* Doc. 157-1, p. 3.  All four CBAs contain terms regarding pay, overtime, and hours of work.  By way of example, the Steelworkers CBA, Article 11, Section 2, credits as "hours worked" not just straight time hours actually worked but also hours in attendance at meetings with plant management within the regularly scheduled workday, hours absent from work due to jury service, and hours spent on union business during the regularly scheduled workday.[4]

As noted above, § 203(o) excludes from hours worked "any time spent changing clothes … at the beginning of end of each workday which was excluded from

---

[4]    The Steelworkers CBA also contains a provision regarding "local working conditions," which are defined as "specific practices or customs which reflect detailed application of the subject matter within the scope of wages, hours or work, or other conditions of employment and includes local agreements, written or oral, on such matters" (see Article 22 in Doc. 50-4, p. 2).

measured working time … by the express terms" of a CBA or "by custom and practice under" a CBA applicable to that particular employee.   PPE qualifies as "clothes" for purposes of § 203(o) analysis, *see Spoerle*, **614 F.3d at 428,** so the key question for resolution here is whether the time spent donning or doffing that PPE was excluded either by the *express terms of* an applicable CBA or by *custom and practice under* an applicable CBA.

The first part of that two-pronged question is answered in the negative. The four CBAs are silent regarding the compensability of time spent donning and doffing (so there are no *express terms* here as to donning and doffing).   But Amsted invokes the latter part of § 203(o), contending that a longstanding past practice exists that time spent donning and doffing PPE is unpaid (Doc. 157-1, p. 4).

Indisputably, Amsted employees are not now and have never been paid for time spent donning and doffing PPE.   To show that this established practice constitutes a § 203(o) custom and practice, Amsted has submitted the following. Amsted tenders deposition excerpts from several union members and officials, indicating that the union *has been aware* of the practice for an *extended period of time* and has *acquiesced* to the practice. Amsted stresses that the unions (fully cognizant that Amsted did *not* pay for this time) never made any proposals during CBA negotiations that donning and doffing PPE should be paid time, and the Steelworkers union never filed any grievances seeking payment for this time.   Amsted offers deposition testimony to support each of these assertions.

For instance, long-time Steelworker Lenroy Johnson testified that in his 20 years as a union officer, his union never sought to change this situation, and no

employee ever came to him asking to change the practice.  Another Steelworkers union officer since 1999, John Logan testified that the nonpayment for donning protective gear was a custom and practice between the union and Amsted.  Logan (who had sat at the bargaining "table" in 2004, 2007, and 2010 while CBAs were being negotiated) additionally testified that, as he understood it, not paying for time donning and doffing qualified as a "local working condition" under the CBA (*see* footnote 4, above).

Larry Watson, who has been on the Steelworkers negotiating team since at least 2004, testified that the union knew that workers did not get paid for time putting on and taking off protective gear, and over an extended period of time, *acquiesced* in that practice. Another Amsted employee and union officer, Ralph Gore, testified that (as to workers not being paid for time donning and doffing PPE) that had been the practice at the plant ever since he worked there, a period of over 11 years.

Gore further testified that during his tenure on the union's negotiating committee, he was never aware of any employee filing a grievance regarding time spent donning PPE, he never knew of anyone informally presenting this issue, he never heard anyone complain that they were not being paid for this time, and there were never even any internal discussions about proposing a change to this practice.   Indeed, Gore testified that even after the union learned of this lawsuit (and the specific allegations about unpaid donning and doffing of PPE), the union had not gone to the company to try to change the practice. Steelworker Danny Saines, a union officer who is one of the Plaintiffs herein, testified that he knew time spent donning and doffing PPE was unpaid, and the union never proposed any change to that practice.  *See* Deposition excerpts at Docs. 157-2, 157-3.

Amsted points out that all four unions have executed multiple CBAs fully aware that time spent donning and doffing PPE is unpaid and never asking that this practice be altered. This statement is supported by, inter alia, the sworn declaration of Chris Dockery, Manager of Safety and Human Relations for Amsted, who (as the company's representative in labor negotiations) attends bargaining sessions and personally participates in the grievance process.  *See* Doc. 157-2, p. 5.

Viewed in the light most favorable to the non-movants/Plaintiffs, the evidence establishes a custom or practice of nonpayment for the PPE donning and doffing at Amsted.  Plaintiffs maintain, though, that Amsted has failed to demonstrate a custom or practice "under a bona fide collective-bargaining agreement" as needed to trigger § 203(o)'s exclusion.  *Id.*  The Court disagrees.

Plaintiffs take issue with Amsted's use of deposition testimony from "hand-selected" union members. Plaintiffs dispute whether such individuals can speak on behalf of the unions as a whole, and Plaintiffs question the motives of these deponents (see Doc. 170, pp. 4-5).[5]  But Plaintiffs had the right to select different or additional deponents and present their testimony (or other contracts, affidavits, or documents) contradicting or undermining Amsted's evidence that the unions knew of and never challenged this policy of nonpayment for PPE don/doff time.  They did not do so.

_____

[5]      Plaintiffs point out that Johnson told others in his union that the economic downturn left him concerned that it was not a good time for a lawsuit, and Watson worries the lawsuit will hurt collective bargaining (*see* Doc. 170, p. 5).  These statements neither destroy the credibility of the deponents' testimony regarding the knowledge of or acquiescence in Amsted's policy of not paying workers for donning and doffing PPE nor create a genuine issue of material fact regarding § 203(o).

Relying on a Pennsylvania district court case (***Figas v. Horsehead Corp., 2008 WL 4170043, at \*13 (W.D. Pa. 2008)***)), and a Minnesota district court case (***Kassa v. Kerry, Inc.,*** **487 F. Supp. 2d 1063 (D. Minn. 2007))**, Plaintiffs argue that a custom or practice "means more than simply violating the law for an extended period of time" (Doc. 170, p. 12).  Plaintiffs say a question of fact remains as to whether a true custom or practice existed, because Amsted has not produced evidence establishing that the union members understood or believed that donning and doffing PPE *should be compensated* and still agreed to "doing it without compensation" (Doc. 170, p. 4).

Plaintiffs' arguments have first-blush appeal but do not withstand closer scrutiny.  The uncontroverted record before the Court discloses that all four unions have negotiated and executed multiple CBAs fully aware of the practice at issue.  In over 20 years of CBA negotiations (up to and even after this lawsuit was filed), the unions involved here have never proposed any change to this well-settled practice. An analogous (though not identical) case from the Third Circuit Court of Appeals navigated the same arguments presented here as to the proper reading of § 203(o)'s custom or practice language and is instructive.

In ***Turner v. City of Philadelphia***, **262 F.3d 222 (3rd Cir. 2001),** the Court of Appeals affirmed the grant of summary judgment on this issue, based on a finding that the plaintiffs had acquiesced to a custom or practice of non-compensability for time spent changing clothes**.**  The ***Turner*** plaintiffs conceded that a custom or practice existed as to this being unpaid time, but they insisted that for the custom or practice to fall "under a bona fide collective-bargaining agreement," the issue of compensability had to be specifically raised in negotiations and dropped or abandoned by the negotiators.

In other words, plaintiffs maintained that workers could not forfeit their FLSA right to compensation by simply failing to contest a 30-year old policy of non-compensability. The District Court disagreed, granting summary judgment for the employer under §203(o). The Court of Appeals affirmed, explaining (**262 F.3d at 225-26, emph. added**):

> [P]laintiffs interpret the phrase "custom or practice under a bona fide collective-bargaining agreement" too narrowly, placing undue emphasis on the clause "under a bona fide collective-bargaining agreement" while virtually reading the clause "custom or practice" out of § 203(o). In essence, plaintiffs construe [§ 203(o)] as "custom or practice established through formal collective bargaining negotiations.
>
> **To the contrary, we view the phrase as simply restating the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence.** *See, e.g., Detroit & Toledo Shore Line R.R. Co.,* 396 U.S. 142, 153-54 … (1969).

Underlying facts regarding the parties' negotiations differ from ***Turner*** to the instant case, but the undersigned Judge agrees with the Third Circuit's holding that it is not necessary that a custom or practice be discussed during formal CBA negotiations for § 203(o) to apply, and a prolonged period of acquiescence can convert a custom or practice into an implied term of a labor agreement.

Likewise instructive is the Fifth Circuit's opinion in ***Allen*, 593 F.3d 457,** expressly holding that "even when negotiations never included the issue of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period of time, and that was in effect at the time a CBA was executed, satisfies § 203(o)'s requirement of 'a custom or practice under a bona fide' CBA…. In such instances, regardless of whether the parties negotiated

regarding compensation for changing time, acquiescence of the employees may be inferred."

The Eleventh Circuit Court of Appeals reached the same conclusion in ***Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007),** an FLSA collective action brought by current and former employees of a chicken processing facility**.** The defendant employer moved for summary judgment arguing, inter alia, that § 203(o) barred the employees' claims for time spent changing clothes. The district court granted the motion, and the Court of Appeals affirmed.

Finding that a § 203(o) custom and practice *under a collective bargaining agreement* existed, the Court emphasized that the absence of negotiations on the issue of payment for changing clothes does not "equate to ignorance of the policy;" rather, "it demonstrates acquiescence to it." ***Id.,* 488 F.3d at 959.** The ***Anderson*** Court found that "a common sense understanding of the statute's language" produces the conclusion that a policy, *written or unwritten,* concerning compensation (or noncompensation) for clothes changing, if in force or effect at the time a CBA was executed, satisfies § 203(o)'s requirement of a custom or practice "under a bona fide collective-bargaining agreement." ***Id.,* 488 F.3d at 958-59.**

So, too, held the Sixth Circuit Court of Appeals last year in ***Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010).** An hourly employee of a frozen food production plant brought an FLSA action in which 243 current and former Kellogg workers joined, seeking to recover (inter alia) compensation for time spent donning and doffing mandatory food safety uniforms and protective equipment. Kellogg sought

summary judgment on several grounds, including § 203(o).  The district court granted the motion, and the Court of Appeals partially affirmed and partially reversed.

As to the issue under consideration here, the Sixth Circuit affirmed the grant of summary judgment in the employer's favor.  Key to that decision was the fact that there was a longstanding policy of nonpayment for time donning the uniforms/gear, the union knew that Kellogg did not pay employees for that time, and the union negotiated several CBAs.  The Court held, **619 F.3d at 618,** that this constituted "a custom or practice of nonpayment for time spent changing clothes under a bona fide CBA….  Accordingly, the time spent donning and doffing the equipment is excluded from 'hours worked' under § 203(o)."[6]

Here, as in ***Anderson*** and ***Franklin***, the uncontroverted record before the undersigned Judge establishes that several CBAs were executed over a period of many years, while the unions were fully aware of the policy of nonpayment for this time. There is no indication whatsoever that anyone ever challenged the policy of nonpayment.  To the contrary, the record reveals acquiescence to this implied term of the parties' agreement.

Amsted has shown a "custom or practice under a bona fide collective-bargaining agreement" applicable to these employees, triggering application of § 203(o). Thus, § 203(o) excludes the time spent donning and doffing the PPE from the "hours

---

[6]     In reaching this conclusion, the Sixth Circuit squarely rejected the plaintiffs' argument (also put forth in our case) that the employer had to prove more, i.e., that to fall under § 203(o), the employer must show that the union or employees knew that they were *entitled to payment* for that time and, armed with this knowledge, negotiated the CBAs without proposing any change to the practice. ***Id.*, 619 F.3d at 616.**

worked" by Plaintiffs.  Amsted is entitled to summary judgment as to the time donning and doffing PPE.

### (2)  WHETHER PLAINTIFF'S DONNING AND DOFFING CANNOT, AS A MATTER OF LAW, CONSTITUTE PRINCIPAL ACTIVITY

Next, Amsted urges this Court to find that because Plaintiffs' donning and doffing of PPE is excluded under § 203(o) it cannot, as a matter of law, constitute "principal activity" that starts the compensable work day (see Doc. 157-1, pp. 2, 7, 11). On this issue, federal district courts have reached different conclusions.  A decision from the Northern District of Indiana on precisely this point currently is on appeal to the Seventh Circuit – *Sandifer v. U.S. Steel Corp.*, 2009 WL 343022 (N.D. Ind. 2009). *Sandifer* is a case involving uncompensated time for employees at a Gary, Indiana steel production plant who don and doff PPE including "greens" (flame-retardant jackets and pants), hard hats, safety glasses, steel-toed shoes with metatarsal guards, gloves, and other devices.  Docketing information indicates that the Court of Appeals has just extended the briefing schedule through December 21, 2011, so (given the existing Scheduling Order in the instant case) this issue will not be resolved before the undersigned Judge must rule on the motions before him.

As discussed above, the FLSA requires employers to pay their employees for time spent doing "work," and the United States Supreme Court's broad construction of the word "work" prompted Congress to enact the Portal-to-Portal Act.  The Portal-to-Portal Act, 29 U.S.C. 251, et seq., "represented an attempt by Congress to delineate certain activities which did not constitute work, and therefore did not require compensation.… The Act was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the

conventional expectations … of compensation." ***Reich v. New York City Transit Authority,*** **45 F.3d 646, 649 (2nd Cir. 1995).**

Specifically, § 254(a) of the Act relieves employers of responsibility for paying employees for the following activities: (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities the employee was hired to perform, and (2) activities which are preliminary to or postliminary to those principal activities and "which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

But not *all* preliminary or postliminary activity can be uncompensated.  As the Supreme Court held in ***Steiner***, **350 U.S. at 256,** activities performed either before or after the regular work shift are compensable, *if* they are an "integral and indispensable" part of the principal activity.  In ***Alvarez,*** **339 F.3d at 902-03**, the Ninth Circuit explained that to be integral and indispensable, "an activity must be necessary to the principal work performed and done for the benefit of the employer."  Affirming the Ninth Circuit's decision, the U.S. Supreme Court held that any activity that is integral and indispensable to a principal activity is itself a principal activity under the Portal-to-Portal Act.  ***IBP***, **546 U.S. at 37.**[7]

The determination of what constitutes a principal activity is based on the circumstances of a given case.  ***See, e.g., Alvarez***, **339 F.3d at 902 ("The Supreme**

---

[7]    The Supreme Court further held that, *during* a continuous workday, any walking time that occurred after the beginning of the employee's first principal activity and before the end of the employee's last principal activity does not fall within Section 4(a) of the Portal-to-Portal Act (the exemption discussed above) and thus is *covered* by the FLSA.  ***Id.***

Court's approach to this 'principal,' 'integral and indispensable' duty question is context-specific."); **29 C.F.R. 790.7(b)("activities which under one set of circumstances may be 'preliminary' or 'postliminary' may under other conditions be 'principal' activities.").** By way of example, the Ninth Circuit in ***Alvarez*** concluded that donning and doffing of job-related protective gear at a meat-packing plant met the integral and indispensable test, because it was required by company rules, mandated by law, and done for the benefit of the employer. ***Alvarez*, 339 F.3d at 903.**

> **29 C.F.R. 790.8(c)** provides another example of an integral activity:

> > Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.
> > On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

The U.S. Department of Labor ("DOL") has promulgated several general policy statements and opinion letters addressing the effect of the Portal-to-Portal Act on the determination of what constitutes principal activity. Such internal policy statements and opinion letters are not entitled to the ***Chevron***-style deference accorded an agency's interpretation of an ambiguous statute (***see Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)**), but they are entitled to "respect … to the extent that [they] have the power to persuade." ***Christensen v.***

*Harris County,* 529 U.S. 576, 587 (2000). *See also Bamonte* v. *City of Mesa,* 598 F.3d 1217, 1223 (9th Cir. 2010).

In its summary judgment motion in the instant case, Amsted asks this Court to find that since Plaintiffs' donning and doffing of PPE is excluded from "hours worked" via § 203(o), that activity -- *as a matter of law* -- cannot be considered a principal activity. In other words, Amsted argues that activities which are not part of the employees' measured working time can never be principal activities which start or end the workday.

A DOL opinion letter supports Amsted's interpretation. DOL Opinion Letter FLSA 2007-10, 2007 WL 2066454 (May 14, 2007) states:

> In promulgating this provision [§ 203(o),] Congress plainly excluded activities covered by section 3(o) from time that would otherwise be "[h]ours worked." 29 U.S.C. § 203(o). Accordingly, activities covered by section 3(o) cannot be considered principal activities and do not start the workday. Walking time after a 3(o) activity is therefore not compensable unless it is preceded by a principal activity.

The undersigned Judge does not find that opinion letter persuasive, especially in the particular circumstances of (and procedural context of) the matter before this Court. For one thing, the conclusion reached in the 2007 DOL opinion letter goes beyond the language of the statute, without offering any explanation for equating compensability under § 203(o), which can depend on customs and practices under a CBA, with the separate determination of what is a "principal activity" for employees at a particular business.

Furthermore, the DOL abruptly changed course in 2010, issuing a fresh opinion letter in the wake of cases rejecting the 2007 opinion letter. Thus the current

position of the DOL is that activities excluded under § 203(o) *can* be integral and indispensable activities that trigger the start of the continuous workday rule for subsequent activities.  *See Wage and Hour Opinion Letter FLSA 2010-2,* **2010 WL 2468195 ("The weight of authority is to the contrary, with the majority of district courts rejecting the [May 2007] opinion letter….  Consistent with the weight of authority, it is the Administrator's interpretation that clothes changing covered by § 203(o) may be a principal activity.  Where that is the case, subsequent activities, including walking and waiting, are compensable.").**

The undersigned Judge agrees with the reasoning and approach taken by Judge Miller, carefully examining the interplay between § 203(o) and § 254(a) in *Sandifer,* **2009 WL 3430222, at * 11 (emph. added),** and finding them to be separate inquiries.

> **Section 203(o) relates to the *compensability* of time spent donning, doffing, and washing in the collective bargaining process.  It does not render such time any more or less integral or indispensable to an employee's job.** *Andrako v. USS,* 632 F.Supp.2d at 413 (emphasis in original).  Accepting [the employer's] argument and the conclusion of the Opinion Letter on this issue would necessarily "expand § 203(o)'s exclusion beyond donning, doffing and washing time to include post-donning and pre-doffing travel time, which is not mentioned therein." *Figas v. Horsehead Corp.,* 2008 WL 4170043, at *20.

Ultimately, Judge Miller *declined* to hold as a matter of law that once an activity is deemed non-compensable under § 203(o), it can never be considered a principal activity under the FLSA (and thus can never start the continuous workday). In the case at bar, on the instant motion, the undersigned Judge reaches the same conclusion.

Whether or not an activity which § 203(o) renders noncompensable under a CBA under could *ever* mark the start or end of an employee's continuous workday under the Portal-to-Portal Act is a broader question not before the Court on this motion. The question here, in the context of Amsted's summary judgment motion, is whether (construing the facts and reasonable inferences in the light most favorable to non-movants/Plaintiffs), the undersigned Judge finds that the non-compensability of Plaintiffs' donning and doffing under § 203(o) necessarily means that those activities cannot be an integral and indispensable part of Plaintiffs' principal activities.  That is a leap the undersigned Judge cannot make on the record before him.

Like Judge Miller, the undersigned concludes that summary judgment is not warranted for Amsted on this point.  ***Sandifer*, 2009 WL 3430222, at \*11 ("The court can't conclude as a matter of law that the noncompensability of donning, doffing, and showering activities under 29 U.S.C. § 203(o) excludes consideration of whether, pursuant to 29 U.S.C. § 254(a), those activities are an integral and indispensable part of employees' principal activities at USS.").**  The Sixth Circuit reached the same conclusion in ***Franklin*, 619 F.3d at 619:**  "We agree with the courts that have taken the position that compensability under § 203(o) is unrelated to whether an activity is a 'principal activity.'"

In denying summary judgment on this ground, this Court does not hold that Plaintiffs' donning and doffing of PPE ***is*** a principal activity which starts (or ends) the continuous workday.  Nor does the undersigned Judge now find that this donning and doffing ***is not*** a principal activity.  That is not the issue currently before the Court. The Court simply rejects Amsted's argument that exclusion of the time under § 203(o)

automatically disqualifies those activities from being considered integral and indispensable to Plaintiffs' principal activities on behalf of Amsted.

In other words, construing the facts and reasonable inferences in the light most favorable to Plaintiffs, it is *possible* that Plaintiffs' donning and doffing of PPE is required by Amsted, is necessary to performance of Plaintiffs' duties and primarily benefits Amsted, such that it is in integral and indispensable activity that defines the outer parameters of the workday. Therefore, Amsted is not entitled to summary judgment on this basis.

E.      Conclusion

For all these reasons, the Court **GRANTS in part and DENIES in part** Amsted's motion for partial summary judgment (Doc. 157). The motion is *granted* in that the Court **FINDS** that Section 203(o)'s exclusion applies to the time Plaintiffs spent donning and doffing PPE. The motion is *denied* in that the Court rejects Amsted's assertion that, under Section 254(a), *as a matter of law,* Plaintiffs' time spent donning and doffing PPE cannot constitute a principal activity under the FLSA.

IT IS SO ORDERED.

DATED September 20, 2011.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge