IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHESTER MARSHALL and RICHARD WHITBY, individually and on behalf of a class of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 10-cv-0011-MJR-SCW ) |
| AMSTED RAIL COMPANY, INC., | ) ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

REAGAN, District Judge:

### A.   Introduction

In this lawsuit under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, et seq., conditionally certified as a collective action, 478 hourly-paid employees at a local manufacturing plant seek to recover unpaid wages and overtime compensation from their employer, Amsted Rail Company, Inc.  The amended complaint alleges that Amsted owes Plaintiffs pay for time spent on certain pre-shift and post-shift activities, such as donning and doffing protective equipment, obtaining and storing tools, and preparing and cleaning their work areas.

A September 2011 Order ruled on Amsted's motion for summary judgment directed at the claims for donning and doffing personal protective equipment (PPE).  The undersigned Judge granted that motion in part, concluding that Plaintiffs' claims

for compensation based on time donning and doffing PPE were barred by § 203(o) of the FLSA.[1]

Following the Seventh Circuit Court of Appeals decision in an FLSA donning-and-doffing case in May 2012, the undersigned Judge granted summary judgment for Amsted on a second basis – finding that because the time spent donning and doffing PPE fell under § 203(o), it cannot – *as a matter of law* – constitute a "principal activity" which starts or ends the compensable workday under the FLSA.  **See Doc. 204 and** *Sandifer v. United States Steel Corp.,* **678 F.3d 590 (7th Cir. 2012).**

Now before the Court is Amsted's July 16, 2012 motion for summary judgment, which has been extensively briefed by counsel and ripened with the filing of a reply on September 6, 2012 (*see* Docs. 212, 213, 218, 224).  For the reasons stated below, the Court DENIES Amsted's motion for summary judgment.

B. <u>**Applicable Legal Standards**</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(a).**

---

[1] Section 203(o) provides that in determining the hours an employee worked, "there shall be excluded any time spent in changing clothes … at the beginning or end of each workday" which was excluded from measured working time by the express terms of (or custom and practice under) a bona fide collective bargaining agreement.

In assessing a summary judgment motion, the district court must construe all facts in the light most favorable to, and draw all legitimate inferences in favor of, the nonmovant. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011); *Spivey v. Adaptive Marketing, LLC*, 622 F.3d 816, 822 (7th Cir. 2010); *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). But once the movant challenges the factual support and legal soundness of the plaintiff's claim, the plaintiff acquires the burden of demonstrating that a genuine fact issue remains for trial. *Marcatante*, 657 F.3d at 440, *citing Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007). *See also Reget*, 595 F.3d at 695.

A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, to survive summary judgment, the plaintiff must produce admissible evidence on which a jury could find in his favor. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

C. <u>Analysis</u>

The FLSA requires employers to pay overtime to employees who work over 40 hours in a work week. **29 U.S.C. 207(a).** The employee bears the burden to prove that he performed overtime work for which he was not compensated. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173 (7th Cir. 2011).[2] Not all work-related activities count as

---

[2] The employer has the burden to establish any *exemption* applicable under the FLSA. *Kennedy v.*

"work" that must be compensated under the FLSA. *Musch v. Domtar Industries, Inc.,* **587 F.3d 857, 859 (7th Cir. 2009).**

For example, in 1947, Congress amended the FLSA by passing the Portal-to-Portal Act, **29 U.S.C. 251,** *et seq.,* which, inter alia, *excluded* from compensable time activities that are preliminary or postliminary to an employee's "principal activity." As a general rule, employers do not have to pay employees for time spent performing preliminary or postliminary tasks. *See Musch,* **587 F.3d at 859; 29 U.S.C. 254(a).** Case law interpreting (and regulations promulgated under) the Portal-to-Portal Act have clarified that, under normal conditions, activities like showering or changing clothes are not compensable, but they *can be* compensable if they are integral and indispensable to the principal activity for which the employee is covered. *See, e.g., Steiner v. Mitchell,* **350 U.S. 247, 256 (1956); 29 C.F.R. 790.7(g), 790.8(c).**

Turning to the case *sub judice,* Amsted employees are not paid on the basis of their clock-in and clock-out times. They are paid based on their scheduled shifts. Amsted permits employees to clock in up to 29 minutes before their shift and to clock out up to 29 minutes after their shift. Workers can use six different time clocks throughout the facility and are not specifically instructed as to when and where to clock in or out. However, they must be at their department, ready for work, when their shift begins. Employee practices differ widely as to how and when they clock in and clock

---

*Commonwealth Edison Co.,* 410 F.3d 365, 370 (7th Cir. 2005); *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974).

out at Amsted, as well as what they do between clocking in and starting work (and, conversely, what they do between finishing their shift and clocking out).

The time clock data, which Amsted maintains in a "clock ring report," is used primarily to track attendance. Plaintiffs contend that by *requiring* employees to perform certain tasks between the time they clock in and the time they start their shift (plus between the time they finish their shift and the time they clock out), Amsted has "received substantial unpaid labor from their hourly-paid employees" (Amended Complaint, Doc. 80, pp. 1-2). The gist of Amsted's summary judgment motion is that *Sandifer* rendered obsolete Plaintiffs' entire theory of liability, precluding Plaintiffs from relying on any evidence of when they clocked in and out to show the fact (or amount) of time worked off-the-clock.

Plaintiffs have maintained that the time clock punches reasonably reflect the actual start and end times of their workday. Amsted concedes that before *Sandifer*, "Plaintiffs' time clock claim made sense – at least in theory" (Doc. 213, p. 1). All employees donned and doffed some form of protective gear, so if donning and doffing were principal activities that could start and end the workday under the FLSA, "then some Plaintiffs' clock rings may have correlated with the start and end times of the workday," at least as to those Plaintiffs who clocked in right after donning and clocked out right before doffing (*id.*).

*Sandifer* held that if § 203(o) applies, then donning and doffing as a matter of law cannot start or stop the continuous workday. Here the Court has found that § 203(o) applies. Thus, argues Amsted, Plaintiffs cannot use the time clock punches and,

instead, must identify some preliminary and postliminary task done by each Plaintiff which starts and ends the compensable workday under the FLSA -- a task which occurs at or about the time each employee clocked in or clocked out. Without this collective evidence to prove "the confines of the workday," says Amsted, Plaintiffs cannot establish liability or damages in this case. The Court is not persuaded that summary judgment is merited on this basis.

The precise issue certified for interlocutory appeal in *Sandifer* was: "Under the FLSA, where it has been determined that the activities of donning, doffing, and washing are not to be included in hours of employment by operation of 29 U.S.C. § 203(o), can such activities, under any circumstances, start or end the continuous workday under 29 U.S.C. § 254(a)?" *Sandifer v. U.S. Steel Corp.,* **2010 WL 61971, \*5 (N.D. Ind. 2010).** The Seventh Circuit answered the question no. *Sandifer* held that when a collective bargaining agreement classifies clothes-changing time as non-working time (and, therefore, "lawfully not compensated"), then that time cannot be considered a principal employment activity. *Sandifer***, 678 F.3d at 596-97.**

The Seventh Circuit's *Sandifer* opinion does not mention time clocks, time punches, or clock ring theories. *Sandifer* does not declare that, to survive summary judgment, FLSA plaintiffs must have "collective proof" of tasks performed by each worker which could possibly start the continuous workday. *Sandifer* does not address whether time clocks or other record-keeping systems can be relied on by FLSA plaintiffs to estimate uncompensated work. *Sandifer* does not articulate the method by which an off-the-clock FLSA case must (or may not be) be proven.

Relying on one sentence in this Court's November 2011 Order denying a motion to certify an interlocutory appeal, Amsted suggests that this Court already ruled that if the employer prevailed in *Sandifer*, the effect on this case would be to preclude Plaintiffs from relying on time clocks to establish damages. Simply put, that is not what the Court's Order meant. The point of this Court's November 11, 2011 decertification ruling was that resolution of the *Sandifer* appeal "quite likely [would] affect the course of" this case, because it had the *potential* to disallow one method for computing damages, render moot some of Plaintiffs' claims, and alter the analysis of the decertification question (*see* Doc. 195, pp. 5-6).

Plaintiffs had argued in their brief supporting an interlocutory appeal that if *Sandifer* held that donning and doffing (as a matter of law) cannot start or end the continuous workday, then Plaintiffs' damage theory changes, because they must "point to some other pre-shift or post-shift activity as the beginning or end of their continuous workday (*e.g.*, gathering or returning tools)" (Doc. 188, p. 6). The undersigned Judge could not precisely predict the outcome or scope of the *Sandifer* decision but agreed with Plaintiffs' contention that a ruling for the employer would move the focus of Plaintiffs' damages away from donning and doffing and on to some other pre-shift or post-shift task, like obtaining tools. That did not equate to a ruling that all time clock evidence is irrelevant, such that Amsted would be entitled to summary judgment.

Amsted emphasizes the significant diversity in pre-shift and post-shift routines among the many Plaintiffs. For instance, discovery has revealed that the tasks performed after clocking in vary considerably from Plaintiff to Plaintiff. Some Plaintiffs

clock in and walk to a break room or locker room, others clock in and directly go to get tools or connect machinery, others make small-talk with coworkers or pray. Some employees get tools *during* their shift not before it. Plaintiffs' post-shift routines and habits likewise diverge. The Court agrees with Amsted that "what, exactly, the clock rings capture varies from Plaintiff to Plaintiff" (Doc. 213, p. 4). Those arguments make a convincing case for decertification more than they support the grant of summary judgment.

Plaintiffs have presented evidence (e.g., Shop Rules and Regulations, depositions/declarations) that they are required to clock in before their shift begins and that they must be in their department, at their post, ready to commence work by the start of their shift. The pre-shift and post-shift activities (which can be grouped into five categories, *see* Doc. 218, p. 9) differ to a substantial degree from Plaintiff to Plaintiff, and certainly not every Plaintiff performs each of the tasks. But evidence indicates that nearly every Plaintiff performs tasks outside his or her scheduled shift, and (given the Job Safety Analyses and job descriptions) some of these tasks may well be performed for the primary benefit of Amsted.

Genuine issues of material fact remain as to whether Amsted required employees to do compensable work outside of their scheduled shift times. Fact questions exist as to whether certain Plaintiffs arrived to work early or stayed late *voluntarily* or because it was mandated by company policy. Fact questions linger as to the nature of the pre-shift and post-shift activities (as well as the amount of time spent on them).

Post-*Sandifer,* donning and doffing cannot be used to "bookend" the workday. At trial Plaintiffs will have to show that some pre-shift and post-shift work they performed was integral and indispensable to a "principal activity" of their job, such that it is compensable under the FLSA. Plaintiffs also will have to present the jury with a reasonable estimate of the amount of unpaid work they performed. The time clock records may be helpful toward this end; the jury will determine what has been proven. The time clock punches neither establish nor defeat Plaintiffs' case. It remains to be seen whether Plaintiffs can establish liability or damages, but *Sandifer* does not render all evidence of clock rings irrelevant or inadmissible. Genuine issues of material fact remain, and Amsted has not demonstrated entitlement to judgment as a matter of law.

### D. Conclusion

For all these reasons, the Court **DENIES** Amsted's motion for summary judgment (Doc. 212). Trial is set at 9:00 am on December 3, 2012. The Court heard argument October 26, 2012 on Amsted's motion to decertify and awaits supplemental briefs (due November 2, 2012 and November 9, 2012) on that issue.

IT IS SO ORDERED.

DATED October 31, 2012.

                                                s/ *Michael J. Reagan*
                                                Michael J. Reagan
                                                United States District Judge